IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JAMES E. SHERROD, | ) | |
| | ) | |
| Petitioner, | ) | 4:07CV3216 |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT HOUSTON, Director, | ) | **MEMORANDUM AND ORDER** |
| Nebraska Department of Correctional | ) | |
| Services (DCS), | ) | |
| | ) | |
| Respondent. | ) | |

James E. Sherrod (Sherrod or Petitioner) claims that prison authorities unlawfully revoked "good time" credit as a result of a 1988 prison disciplinary proceeding and he belatedly seeks relief by way of a Petition for Writ of Habeas Corpus. (Filing 1 (petition); filing 5 (supplement to petition); filing 8 (memorandum and order on initial review).) The Respondent has answered (filing 52) and has submitted the relevant records. (Filing 29 Parts 2 and 3; filing 37 Part 2; filing 54 Part 2; filing 55.[1]) The parties have been given an opportunity to brief all aspects of this case and they have submitted briefs. Because the statute of limitations has run and the claims otherwise lack substantive merit, the Petition for Writ of Habeas Corpus will be dismissed with prejudice. In addition, and with one exception, the pending motions submitted by the Petitioner and the Respondent will also be denied.

## I. BACKGROUND

Sherrod has two claims. First, Sherrod asserts that he was denied due process of law when the prison authorities found that he had raped his cell mate and when they punished him by revoking "good time" credit. He argues that the evidence was insufficient. (Filing 8, at CM/ECF pp. 2, 4.) Secondly, he also claims that he was

---

[1] Filing 55 is a more legible copy of filing 54.

denied due process of law in that he was denied the opportunity to appeal the disciplinary action to the prison Appeals Board. He asserts that a prison staff member failed to forward his appeal to that body. (*Id.*)

Sherrod, who has filed numerous actions in this court, is serving two lengthy consecutive prison sentences for separate sexual assaults. See *Sherrod v. Houston*, No. 8:08CV170, 2008 WL 4585433 (D. Neb., October 14, 2008) (discussing history of Sherrod's cases and dismissing habeas corpus petition due to his failure to obtain permission to file a second or successive petition from the Court of Appeals). It is important to understand those state cases because both are relevant to this one.

One conviction occurred in Douglas County, Nebraska, and, after a finding that Sherrod was a habitual criminal, a prison sentence of 35 years was imposed. *Id.* at * 1 (citing *State v. Sherrod*, 425 N.W.2d 616 (Neb. 1988).[2]) The other conviction, obtained in Lancaster County, Nebraska, involved a sexual assault of an inmate, and resulted in a sentence of 25 to 30 years in prison consecutive to the Douglas County sentence. *Id.* at * 1 n. 2 (citing *State v. Sherrod*, 464 N.W2d 809 (Neb. 1991).[3]) Each of these state convictions and sentences has been the subject of numerous unsuccessful federal habeas corpus actions. *Id.* at * 1 & n. 2 (detailing the repetitive federal habeas corpus actions attacking both convictions). The Petitioner is therefore barred from again attacking the convictions or the resulting sentences set out in *Sherrod I* and *Sherrod II* because he has failed to obtain the permission of the Court of Appeals to file successive federal habeas corpus actions as required by 28 U.S.C. § 2244(b)(3)(A).

In this case, however, Sherrod asserts a slightly different cause of action. He attacks a separate prison disciplinary action that was commenced as a result of the

---

[2]*Sherrod I.*

[3]*Sherrod II.*

sexual assault of the inmate that formed the basis for *Sherrod II*.[4] That separate disciplinary action effectively "extended" Sherrod's first prison sentence (*Sherrod I*) by revoking "good time" credit.

To the degree that the Petitioner merely seeks restoration of "good time" credit, his habeas petition is not barred by the "successive petition" rule because this is apparently the first federal habeas case directed at that separate legal proceeding. *See Crouch v. Norris*, 251 F.3d 720, 724 (8th Cir. 2001) (petitioner was not required to seek permission of the Court of Appeals to file a second or successive habeas petition where petitioner sought to challenge the denial of parole in a habeas corpus action even though the petitioner had previously filed a habeas petition attacking the underlying conviction; accordingly, the application to file a successive petition was denied as unnecessary).

With the foregoing in mind, and concentrating solely on the prison disciplinary proceeding and related actions, the following are the undisputed material facts:

1. On August 23, 1988, Captain Steve Peck filed a disciplinary misconduct report against Sherrod. (Filing 55 at CM/ECF p. 2.) Peck stated the following:

> At approximately 10:30 a.m. on August 23, 1988, I, Captain Steve Peck, received information from a confidential informant that Inmate James Sherrod, #37886, had sexually assaulted his roommate, Inmate Paul

---

[4]It is clear that the assault on an inmate that resulted in the Lancaster County conviction is the same sexual assault that resulted in the disciplinary action that Sherrod now attacks. In the Lancaster County case, Sherrod received a sentence of 25 to 30 years. *Sherrod II*, 464 N.W2d at 810. In his pleadings, Sherrod specifically links that 25- to 30-year sentence with the disciplinary proceeding he attacks here. (E.g., filing 5 at CM/ECF p. 2 (supplement to petition alleging that "Sherrod was then given an additional prison sentence of twenty-five (25) to thirty (30) years . . . for <u>the crimes alleged in the misconduct report</u> . . . .") (underlining in original).

>   Heimbuck, #37038. The assault allegedly occurred in room BL-27 at approximately 1:00 a.m. on August 23, 1988. According to the informant, Inmate Sherrod, #37886, threatened to stab Inmate Heimbuck, #37038, if he did not submit to having sex with him. Despite Inmate Heimbuck's, #37038, objections, Inmate Sherrod, #37886, then used his penis to have anal sex with Inmate Heimbuck, #37038. Inmate Sherrod, #37886, was also alleged to have kissed Inmate Heimbuck, #37038, on the back of the neck during this act.
>
>   A medical examination of Inmate Paul Heimbuck, #37038, by P.A. Danaher on August 23, 1998, revealed tissue damage on Inmate Heimbuck's, #37038, rectal area. A visual examination of Inmate Heimbuck, #37038, revealed marks on the back of the neck which could have been caused by prolonged kissing.
>
>   It should also be noted that an examination of Paul Heimbuck, #37038, was performed by Lincoln General Hospital staff on August 23, 1988. The incident was referred to the Nebraska State Patrol for further investigation.

(*Id.*)

2.      Sherrod appeared before a corrections official on August 24, 1988, where he was informed of the charges and was presented with a copy of Peck's disciplinary misconduct report. (*Id.*) Petitioner denied the allegations. (*Id.*)

3.      On August 29, 1988, a disciplinary committee, consisting of three prison officials, held a hearing on the charges against Sherrod, but the committee continued the matter pending receipt of a report from the hospital. (Filing 55 at CM/ECF p. 1.) Sherrod was present at the hearing. (*Id.* (signature on left side of document).) Captain Peck also appeared as the charging party. (*Id.* ("employee present").) On September 8, 1988, the disciplinary committee hearing reconvened, the committee took additional evidence, and the committee announced its decision. (Filing 37-2 at CM/ECF pp. 2-3 ¶ 5.) Sherrod was found guilty of aggravated assault, law violations and sexual activities in violation of the prison rules. (*Id.*) As punishment, the

-4-

disciplinary committee imposed a total of one-year forfeiture of "good time" plus 60 days of disciplinary segregation. (*Id.*)

4. On October 11, 1988, the prison's "Appeal Board" conducted a hearing. (*Id.* at CM/ECF pp. 2-4.) The Appeals Board consisted of three prison officials. They were not the same persons who comprised the disciplinary committee. (*Compare* filing 37-2 at CM/ECF p. 4 (signatures) *with* filing 55 at CM/ECF p. 1(signatures).) Sometime shortly thereafter, the Appeals Board issued an undated but detailed decision. (Filing 37-2 at CM/ECF pp. 2-4.) According to a notarized certification of the records manager from the prison, a copy of that decision is in Sherrod's official file. (*Id.* at CM/ECF p. 1.) The copy of the decision in Sherrod's official file shows it was also received by the Board of Pardons on October 18, 1988. (*Id.* at CM/ECF p. 2 ("Received" stamp).[5]) Thus, the decision of the Appeals Board must have been rendered sometime between the date of the appellate hearing (October 11, 1988) and the date the Pardons Board acknowledged receipt of a copy (October 18, 1988). The Appeals Board affirmed the disciplinary committee, but dismissed the law violations because they duplicated the other two charges. (*Id.* at CM/ECF pp. 3-4.)

5. The Appeals Board made specific findings of fact which included the following:

> On August 23, 1988, inmates Paul Heimbuck #37038 and James Sherrod #37886 were assigned to the same cell at the Lincoln Correctional Center. At approximately 1:00 a.m., on August 23, 1988, inmate Sherrod told inmate Heimbuck that Sherrod would cut

---

[5]The earlier disciplinary misconduct report prepared by Captain Peck and information pertaining to Sherrod's first appearance on the charges was also received by the Board of Pardons according to the "receipt" stamp on that document. (Filing 55 at CM/ECF p. 2.) That information was received by the Pardons Board on September 2, 1988. (*Id.*)

Heimbuck's throat or kill Heimbuck if Heimbuck did not cooperate in the performance of sex acts with Sherrod. Inmate Sherrod then forcibly subjected inmate Heimbuck to anal intercourse. During the course of the sexual assault, inmate Sherrod kissed and sucked Heimbuck on the back of Heimbuck's neck. The sexual assault lasted between 10 and 25 minutes.

> On August 23, 1988, physician's assistant Dan Danaher of the Lincoln Correctional Center examined inmate Heimbuck and found that Heimbuck had suffered tissue damage in the anal/rectal area. A visual examination of the back of Heimbuck's neck also revealed marks which could have been caused by kissing/sucking on the neck.

On August 23, 1988, a confidential informant told Capt. Steve Peck of the Lincoln Correctional Center that inmate Paul Heimbuck had been sexually assaulted by inmate James Sherrod. The confidential informant stated that the assault occurred at approximately 1:00 a.m. on August 23, 1988, and had been preceded by threats by Sherrod to stab inmate Heimbuck if Heimbuck did not cooperate with him.

On August 23, 1988, at approximately 10:40 a.m., Capt. Peck contacted the Nebraska State Patrol regarding the assault and inmate Heimbuck was transferred to Lincoln General Hospital for tests. The tests conducted at Lincoln General Hospital revealed the presence of semen in inmate Heimbuck's rectum and in the back of his undershorts.

(*Id.* at CM/ECF p. 2.) (paragraph numbers omitted.)

    6.    The Appeals Board then provided a thorough explanation for its decision:

> In his defense, inmate Sherrod alleges that inmate Heimbuck is homosexual, was attempting to "setup" Sherrod, and that Heimbuck had an opportunity to engage in sexual activities after he was released from his cell on the morning on August 23, 1988, and prior to the discovery of his injuries by staff. Sherrod also notes that no weapon such as a knife was found in his possession. The Appeals Board finds that there

-6-

>is abundant evidence in the record to support the committee's findings. It was reasonable for the committee to maintain the confidentiality of the informant, in order to protect the safety of the informant. It was also reasonable for the committee to consider the statement of the informant to be reliable in light of the fact that there was physical evidence discovered to corroborate the statement of the informant. The Appeals Board does find that the charge of "law violations" is duplicative of the other two charges. The Appeals Board dismisses the charge of "law violations" and affirms the other findings of guilt on the charges of aggravated assault/assault/fighting and sexual activities. The Appeals Board notes that the dismissal of the charge of law violations does not affect the total penalties imposed by the disciplinary committee.

(*Id.* at CM/ECF p. 3.)

7.     Nearly 18 years later, and on June 22, 2006, Petitioner filed a motion to proceed "IFP" and an appeal in the Lancaster County District Court requesting that the prison authorities be ordered to "give his 1 year loss [of] good time back." (Filing 29-2 at CM/ECF p. 5.) On July 17, 2006, the judge denied Sherrod "IFP" status because he had not provided the appropriate paper work (such as inmate account certification) for pauper status and because he had not paid the required filing fee. (*Id.* at CM/ECF pp. 5-6.) Instead of paying the filing fee or submitting the required documents to proceed as a poor person, Sherrod submitted a notice of appeal. (*Id.* at CM/ECF p. 6.)

8.     On February 27, 2007, the Nebraska Court of Appeals directed the parties "to address in their briefs the jurisdictional issues regarding the filing of a poverty affidavit . . . ." (Filing 29-3 at CM/ECF p. 1.)

9.     On August 24, 2007, the Nebraska Court of Appeals dismissed the appeal for lack of jurisdiction because Sherrod had failed to submit an appropriate poverty affidavit. (*Id.* at CM/ECF p. 2.) In part, the court stated: "Appeal dismissed. See Rule 7A(2)." Rule 7A(2) provided that: "When the court determines it lacks

jurisdiction the appeal will be dismissed in the following manner: 'Appeal dismissed. See Rule 7A(2).'" *Rules of Practice and Procedure in the Supreme Court and the Court of Appeals*, Rule 7A(2) (September 16, 2001), reprinted in NEBRASKA COURT RULES AND PROCEDURE, STATE, at 650 (West 2008.) [6] Citing cases, the court added that: "An in forma pauperis appeal is perfected when the appellant timely files a notice of appeal and an affidavit of poverty." (Filing 29-3 at CM/ECF p. 2.)

10. The Nebraska Supreme Court overruled Sherrod's petition for further review on October 24, 2007, and the mandate issued on November 6, 2007. (*Id.*)

11. Sherrod commenced this action on August 29, 2007. (Filing 1.)

## II. ANALYSIS

Sherrod claims that he was denied due process of law (1) because the disciplinary committee had insufficient evidence that he raped his cell mate and (2) because a prison staff member failed to forward his paper work to the institutional Appeals Board thus denying him his administrative appeal rights. As the statute of limitations bars this action and both of the claims lack merit, this case will be dismissed with prejudice.[7]

---

[6] The rule has since been renumbered, but the substance has not changed. *Nebraska Supreme Court Rules*, § 2-107 at p. 15 (effective July 18, 2008), available at http://www.supremecourt.ne.gov/rules/index.shtml.

[7] The court will not address Respondent's additional defense that there was also a procedural default. Because Sherrod apparently attacked the revocation of his "good time" credit through an "appeal" lodged in the Lancaster County District Court under Nebraska's Administrative Procedures Act (filing 29-2 at CM/ECF p. 1 (case summary; "Appeal–Other Agencies . . ."), there is a complex question about whether the state rule against submitting multiple post-conviction actions also applies to multiple appeals brought under the Administrative Procedures Act. If Nebraska would still consider the substance of Sherrod's claim regarding loss of credit even

*The Statute of Limitations Bars the Claims*

It is now clear the statute of limitations ran long before Sherrod filed this action. This court previously determined that (1) the AEDPA one-year statute of limitations (28 U.S.C. § 2244(d)(1)) applied to habeas petitions like this one challenging administrative decisions that revoke "good time" credit (filing 36 at CM/ECF p. 5-8[8]) and (2) the statute of limitations began to run upon the "final determination of the relevant institutional body." (*Id.* at CM/ECF p. 9-10.[9]) Earlier, however, the court was unable to ascertain the "final determination" date because Respondent had failed to file the relevant record. (*Id.* at CM/ECF p. 10.) That deficiency has been remedied by submission of the 1988 Appeals Board decision. (Filing 37-2 at CM/ECF pp. 1-4.)

---

though his attempt was earlier rebuffed because he failed to submit the proper pauper papers, there would be no procedural bar under federal law even though Sherrod's claim would be unexhausted. In fact, there is some indication that Sherrod has been allowed to reopen his state case upon paying or providing for the payment of the filing fees. (*Id.* at CM/ECF p. 1. ("This case is Open as of 11/07/2007.")) It appears that the last of the required filing fees were paid on December 13, 2007. (*Id.* at CM/ECF pp. 1-2 (court cost information, payments made to the court and payments made by the court).) Inasmuch as the answer to the federal procedural default question turns on a difficult state-law issue and because Sherrod's claims are barred anyway, the court declines to address Respondent's additional defense.

[8]Citing *Neugebauer v. Fox*, No. 1:08-CV-015, 2008 WL 824272, at *2 (D. N.D. March 10, 2008) (magistrate judge's report and recommendation; citing *Dulworth v. Evans*, 442 F.3d 1265, 1267-68 (10th Cir. 2006); *Shelby v. Bartlett*, 391 F.3d 1061, 1064-65 (9th Cir. 2004); *Wade v. Robinson*, 327 F.3d 328, 330-31 (4th Cir. 2003); *Cook v. New York State Div. of Parole*, 321 F.3d 274, 279-80 (2d Cir. 2003); *Kimbrell v. Cockrell*, 311 F.3d 361, 363 (5th Cir. 2002)). *See also Neugebauer v. Fox*, No. 1:08-CV-15, 2008 WL 1767054 (D. N.D. April 15, 2008) (adopting report and recommendation).

[9]Citing *Dulworth*, 442 F.3d at 1268-69; *Shelby*, 391 F.3d at 1066; *Wade*, 327 F.3d at 333.

The record now establishes that the Appeals Board heard Sherrod's appeal, the Board denied the appeal no later than October 18, 1988, and the Board's decision was the final administrative decision for the prison.[10] Thus, the limitations period would have begun to run on or about October 18, 1988. However, since this provision of AEDPA did not become law until April 24, 1996, Sherrod had until April 24, 1997 to file his habeas petition or properly seek state relief thus tolling the federal statute. *See*, *e.g.*, *Ford v. Bowersox*, 178 F.3d 522, 523 (8th Cir. 1999) (because judgment against petitioner became final before enactment of section of AEDPA imposing one-year limitation period for filing habeas petitions, a grace period, ending one year after enactment of AEDPA, applied). He did not do so.

It follows that because Sherrod did not file this case, or a relevant state court case, by April 24, 1997 (one year after enactment of AEDPA), his claim is barred. That is true even though Sherrod raises a tolling argument.

Sherrod asserts in his brief (filing 62 at CM/ECF pp. 2, 6) that he was unaware of the decision of the Appeals Board and suggests that the statute of limitations should be tolled as a result.[11] Sherrod states that he asked for a copy of the Appeals Board decision but was told on July 10, 2006, by a unit manager that there was no such decision in his file. (*Id*. at CM/ECF p. 6.)

For several reasons, Sherrod's tolling argument is not persuasive. *See*, *e.g.*, *Runyan v. Burt*, 521 F.3d 942, 945-946 (8th Cir. 2008) (to be entitled to equitable

---

[10]*See*, *e.g.*, *Sepulveda v. Nebraska Dept. of Correctional Services*, 609 N.W.2d 42 (Neb. 2000) (reversing district court and upholding decision of DCS Appeals Board that inmate was guilty of assault and would be punished by loss of "good time.").

[11]Sherrod does not claim that he was unaware that he had been punished with a forfeiture of "good time" by the prison disciplinary committee. Rather, he claims that he was unaware that the punishment had become final.

-10-

tolling a petitioner must show that (1) he was proceeding diligently and (2) that some "extraordinary circumstance" stood in his way and prevented a timely filing; equitable tolling is an "*exceedingly narrow* window of relief" and requires a showing that extraordinary circumstances beyond a prisoner's control made it "*impossible*" to file a petition on time) (italics in original).

Initially, Sherrod's unsworn statement regarding his request for a copy and the alleged absence of a copy of the Appeals Board decision in his official file is rebutted by the declaration of the records manager. In a notarized certification, she attests that a copy of the decision was in Sherrod's official file. (Filing 37-2 at CM/ECF p. 1.) That copy bears a "receipt" stamp showing that the Board of Pardons received a copy of the decision on October 18, 1988. (*Id.* at CM/ECF p. 2.) Sherrod provides no reasonable explanation for the contradiction between his unsworn statement that a unit manager told him in 2006 that the decision could not be located and the certification of the records manager and the production of the decision.

Still further, even if it is true that an employee made a mistake in 2006 about the existence of a 1988 document, there is no reason to believe the employee attempted to lull Sherrod into delay. Nearly 18 years passed between the issuance of the decision in October of 1988 and Sherrod's inquiry in July of 2006. Thus, there is every reason to believe that the employee's mistake (if there was one) represented an honest error. Given Sherrod's long delay in making the inquiry, an honest mistake by a prison employee does not constitute an "extraordinary" circumstance.

Moreover, the relevant question is not whether Sherrod could obtain a copy of the Appeals Board decision but whether he was aware that discipline had been finally imposed such that he could take action to promptly contest it in court. Sherrod does not explain when he first became aware that the loss of credit was final, but it is obvious from the filing of his appeal in the Lancaster County District Court seeking restoration of his "good time " credit that he had knowledge of the finality of that loss

sometime before the filing date of June 22, 2006. Inasmuch as Sherrod's appeal of the related criminal case involving the assault on Sherrod's cell mate was publicly resolved against him in 1991,[12] Sherrod should have known of the finality of his loss of "good time" credit many years before June of 2006. And, if Sherrod truly remained ignorant for nearly two decades that his loss of "good time" credit had become final, he showed a remarkable lack of diligence about his own affairs in waiting until July of 2006 to make an inquiry. That lack of due care defeats his tolling claim.

Finally, even if one assumes that Sherrod is entitled to tolling until June 22, 2006 (the date he filed his appeal in state court seeking restoration of the credit), the statute of limitations would still have run before he filed this federal action on August 29, 2007. This is so because Sherrod's 2006 state court action did not toll the AEDPA statute of limitations as that state court action was "improperly" filed.

In June of 2006, Sherrod was not allowed to proceed in state court because of his failure to file a properly supported pauper application. The Eighth Circuit has recently held that the AEDPA statute of limitations is not tolled in such a circumstance because the tolling provisions of the statute require a "proper" state court filing before tolling may be invoked. *See* Runyan, 521 F.3d at 943-945 (construing 28 U.S.C. § 2244(d)(2)[13]; because the Iowa inmate erred by, among other things, failing to pay the filing fee, the petitioner's state post-conviction action was not "properly filed" as required to toll the AEDPA one-year statute of limitations).

In short, the time between June 22, 2006, and August 29, 2007, counts against Sherrod. During that time, the Petitioner obviously knew that his "good time" credit

---

[12]*See* Sherrod II, 464 N.W2d 809 (Neb. 1991).

[13]The statute provides that the "time during which a *properly filed* application for State post-conviction" relief is pending does not count. (*Id.*)

-12-

had been forfeited because he sought restoration of it. As that 14-month period exceeds one year, the Petitioner's claims are barred even if he is given a generous application of the tolling rules during the preceding 18 years.

*The Claims Have No Substantive Merit*

Even if the statute of limitations did not bar the claims, they must be dismissed because it is obvious that they have no merit. A brief explanation follows.

The Petitioner first claims that the evidence against him was insufficient and that lack of evidence denied him due process. It is true that inmates possess a protected liberty interest in not being arbitrarily deprived of their "good time." *See, e.g.*, *Louis v. Department of Correctional Services of Nebraska*, 437 F.3d 697, 700 (8th Cir. 2006) (evidence in prison disciplinary proceeding of drug abuse was sufficient to impose disciplinary segregation and loss of "good time" even though lab technician did not testify, the lab test used by the prison was not 100% accurate and the test used by the prison was not confirmed by an additional, more accurate test) (citing *Wolff v. McDonnell*, 418 U.S. 539, 556-58 (1974)). That said, "due process requirements 'are flexible and depend on a balancing of the interests affected by the relevant government action.'" *Id.* (quoting *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)). Thus, "good time" credit may be revoked if there is "'some evidence in the record'" to support a rational decision. *Id.*

As detailed in the report of Captain Peck and in the decision of the Appeals Board, the record in this case presents evidence sufficient to uphold the revocation of "good time." (Filing 55 at CM/ECF p. 2; filing 37-2 at CM/ECF pp. 2-4.) A confidential informant reported at approximately 10:30 A.M. on August 23, 1988, that Sherrod had forcibly raped his cell mate earlier that morning after kissing or sucking on the cell mate's neck. That same day, a physical examination conducted by a physician's assistant revealed that the cell mate had injuries to his anus

consistent with rape and marks on his back consistent with prolonged kissing or sucking. Later that same day, a hospital examination revealed semen in the cell mate's rectum and in the cell mate's undershorts. In addition, Sherrod's guilt regarding the rape was proven beyond a reasonable doubt in a separate criminal action. That proof was found sufficient by the Nebraska Supreme Court. *Sherrod II, 464 N.W2d at 810* ("We have reviewed the record in Sherrod's case and determine that the evidence is sufficient to sustain Sherrod's conviction for first degree sexual assault . . . ."). In short, there was "some evidence" to support the revocation of "good time."

Sherrod's second assertion–that he was denied his administrative appeal rights because the staff did not forward his appeal to the Appeals Board–is conclusively disproved by the written decision of that body denying Sherrod's appeal in October of 1988. (Filing 37-2 at CM/ECF pp. 1-4.) As a result, the Petitioner is not entitled to relief on his second claim.

*With One Exception, the Pending Motions Are Denied*

Because they have no merit, Sherrod's motions (filing 46, filing 47, filing 59, and filing 61) for DNA testing, additional documents and the appointment of counsel will be denied. On the other hand, the Petitioner's motion (filing 64) to amend his brief is granted but only to the extent shown in the motion. The Respondent's motion and consent to allow the Petitioner extra time to file his brief (filing 57) is denied as moot inasmuch as the court granted the Petitioner extra time, the Petitioner filed his brief and the court has considered it. (Filing 60 (text only order); filing 62 (brief); filing 64 (amendment to brief).)

IT IS ORDERED that:

1. The Petition for Writ of Habeas Corpus (filing 1 and filing 5) is denied and dismissed with prejudice. A separate judgment will be entered.

2. The Petitioner's motion to amend his brief (filing 64) is granted to the extent shown in the motion. All other pending motions (filing 46, filing 47, filing 57, filing 59, and filing 61) are denied.

Dated February 23, 2009.

                BY THE COURT

                s/ Warren K. Urbom
                United States Senior District Judge